FILED05 MAR '12 12 55USDC-ORP

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TODD RUSSELL STANARD,                    Civil No. 11-6090-AA
                                         OPINION AND ORDER
          Plaintiff,

     vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

          Defendant.
_____

Alan Stuart Graf
Attorney at Law
316 Second Rd.
Summertown, Tennessee 38483
     Attorney for plaintiff

S. Amanda Marshall
United States Attorney
District of Oregon
Adrian L. Brown
Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, Oregon 97204

PAGE 1 - OPINION AND ORDER

David Morado
Regional Chief Counsel, Region X, Seattle
Scott T. Morris
Special Assistant United States Attorney
Social Security Administration
Office of the General Counsel
1301 Young Street, Suite A-702
Dallas, Texas 75202
    Attorneys for defendant

AIKEN, Chief Judge:

Plaintiff, Todd Russell Stanard, brings this action pursuant

to the Social Security Act (the Act), 42 U.S.C. § 405(g), to

obtain judicial review of a final decision of the Commissioner.

The Commissioner denied plaintiff's applications for Title II

disability insurance benefits (DIB) and Title XVI supplemental

security income (SSI) disability benefits under the Act. For the

reasons set forth below, the Commissioner's decision is reversed

and remanded for the payment of benefits.

## PROCEDURAL BACKGROUND

On June 26, 2007,[1] plaintiff protectively filed applications

for DIB and SSI benefits. Tr. 105-110. After the applications

were denied initially and upon reconsideration, plaintiff timely

requested a hearing before an administrative law judge (ALJ).

Tr. 77-78. On October 13, 2009, an ALJ hearing was held before

the Honorable Marni R. McCaghren. Tr. 27-56. On November 19,

2009, ALJ McCaghren issued a decision finding plaintiff not

---

[1]The decision of the ALJ incorrectly states this date as
"June 13, 2007." Tr. 10. Plaintiff actually applied for
benefits on June 26, 2007. Tr. 105.

PAGE 2 - OPINION AND ORDER

disabled within the meaning of the Act. Tr. 10-22. After the
Appeals Council declined to review the ALJ decision on January
21, 2011, plaintiff timely filed a complaint in this Court. Tr.
1-3.

## STATEMENT OF THE FACTS

Born on November 22, 1966, plaintiff was 40 years old as of
the alleged onset date of disability, and 42 years old at the
time of the hearing. Tr. 105. Plaintiff is illiterate and did
not complete schooling past the eighth grade, nor did he obtain a
GED equivalent. Tr. 31-32. Plaintiff did complete a vocational
training course that provided him with the necessary skills to
work as a dog groomer. Tr. 37-38. Plaintiff worked as a dog
groomer for 25 years, with no other relevant work experience of
record. Tr. 33. Plaintiff alleges disability beginning June 10,
2007 due to a broken neck, neck pain, low intelligence, asthma,
and seizures. Tr. 33-45.

A vocational expert (VE) testified at the hearing before the
ALJ. Tr. 47-55. Based on the plaintiff's physical and mental
restrictions, the VE opined that the plaintiff would not be able
to perform his past relevant work as a dog groomer. Tr. 49-50.
However, the VE did find that there were jobs available in the
local and national economies that plaintiff could perform. Tr.
49-55.

## STANDARD OF REVIEW

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First, the Secretary determines whether a claimant is engaged in

PAGE 4 - OPINION AND ORDER

"substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

In step two the Secretary determines whether the claimant has a "medically severe impairment or combination of impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled.

In step three the Secretary determines whether the impairment meets or equals "one of a number of listed impairments that the Secretary acknowledges are so severe as to preclude substantial gainful activity." . Yuckert, 482 U.S. at 140-41; see 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Secretary proceeds to step four. Yuckert, 482 U.S. at 141.

In step four the Secretary determines whether the claimant can still perform "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can work, he is not disabled. If he cannot perform past relevant work, the burden shifts to the Secretary. In step five, the Secretary must establish that the claimant can perform other work. Yuckert, 482 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f). If the Secretary meets this burden and proves that the claimant is able to perform other work which exists in the

PAGE 5 - OPINION AND ORDER

national economy, he is not disabled.  20 C.F.R. §§ 404.1566,
416.966.

## DISCUSSION

### I. The ALJ's Findings

At step one of the five step sequential process outlined
above, the ALJ found that plaintiff had not engaged in
substantial gainful activity since the alleged onset date.  Tr.
12, Finding 2.  This finding is not in dispute.  At step two, the
ALJ found that plaintiff had the following severe impairments:
status-post fracture of C2 vertebrae; borderline intellectual
functioning; functional illiteracy; adjustment disorder; possible
seizure episodes with alteration of consciousness; asthma;
alcohol abuse.  Tr. 12, Finding 3.  This finding is not in
dispute.  At step three, the ALJ found that plaintiff does not
have an impairment or combination of impairments that meets or
medically equals the requirements of a listed impairment.  Tr.
12, Finding 4.  This finding is in dispute.

Based upon plaintiff's impairments, the ALJ determined that
plaintiff had the residual functional capacity (RFC) for less
than a full range of light work.  Tr. 17-20, Finding 5.  This
range of exertion would allow plaintiff to occasionally lift
objects weighing less than 20 pounds, and frequently lift and
carry objects weighing less than 10 pounds.  Id.  Plaintiff was
limited to work that would not require more than occasional

PAGE 6 - OPINION AND ORDER

flexion, extension or rotation of the neck, overhead reaching or
safety risks. Id. The ALJ also found that plaintiff should not
work at unprotected heights or with moving machinery. Tr. 17-18.
Additionally, because of plaintiff's asthma, the ALJ found that
plaintiff should not be exposed to extreme temperatures or high
concentrations of respiratory irritants such as fumes, dust, or
gasses. Tr. 17. Finally, with regard to his mental impairments,
the ALJ found that plaintiff could not engage in employment that
requires reading, written communication or social and verbal
skills. Tr. 18.

At step four of the sequential evaluation, the ALJ
determined that plaintiff was unable to perform his past relevant
work. Tr. 20, Finding 6. This finding is not in dispute.
Finally, at step five, the ALJ found there are jobs existing in
significant numbers in the national and local economies that
plaintiff could perform. Tr. 20, Finding 10. This finding is
not in dispute.

## II. Plaintiff's Allegations of Error

Plaintiff alleges that the ALJ erred in three ways: first,
for improperly discrediting plaintiff's testimony; second, for
improperly discrediting the medical opinion of Dr. Kokkino; and
third, by finding at Step 3 that plaintiff's mental impairments
did not meet or equal Listing § 12.05C, such that he is
presumptively disabled.

PAGE 7 - OPINION AND ORDER

## A. Discrediting Plaintiff's Complaints

Plaintiff's first assignment of error is that the ALJ failed to provide specific and sufficient reasons for discrediting plaintiff's pain complaints. Pl. Opening Br. 15. Specifically, plaintiff contends that the ALJ failed to provide clear and convincing reasons for finding that plaintiff's subjective pain testimony was inconsistent with his reported activities of daily living. Pl. Opening Br. 12. For the reasons stated below, the credibility findings of the ALJ are affirmed.

In deciding whether to accept subjective symptom testimony, such as reports of pain, an ALJ must perform two stages of analysis. 20 C.F.R. § 404.1529. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996).

At the second stage of the credibility analysis, assuming there is no affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. Smolen, 80 F.3d at 1284; see also Lingenfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007); Morgan v. Apfel, 169 F.3d 595, 599 (9th Cir. 1999). Clear and convincing reasons may include inconsistencies in a claimant's testimony, including those

PAGE 8 - OPINION AND ORDER

between daily activities and the alleged symptoms.  See Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005); Rollins v. Massanari, 261 F.3d 853, 856-57 (9th Cir. 2001); Smolen, 80 F.3d at 1284 n.7.  The ALJ may also consider the claimant's history of medical treatment or prior work history in assessing a claimant's credibility.  Burch, 400 F.3d at 681; Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).

If an ALJ finds that the claimant's testimony regarding his subjective symptoms is unreliable, the "ALJ must make a credibility determination citing the reasons why the testimony is unpersuasive."  Morgan, 169 F.3d at 599.  In doing so, the ALJ must identify what testimony is credible and what testimony undermines the claimant's complaints and make "findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit the claimant."  Thomas, 278 F.3d at 958.

Here, the ALJ listed several reasons for finding plaintiff's testimony regarding the extent of his injuries and pain not credible.  First, the ALJ found that the objective medical evidence contradicted plaintiff's subjective testimony regarding his seizures.  Tr. 19.  Plaintiff testified that a seizure was the cause of the fall that lead him to break his neck and that he subsequently experienced four additional seizures.  Id.  The ALJ noted, however, that medical records indicated that plaintiff may

PAGE 9 - OPINION AND ORDER

have fallen and broken his neck because he was intoxicated, not because he had a seizure. Tr. 19. Moreover, the ALJ noted that medical reports associated with plaintiff's hospitalization for the broken neck do not contain any indication of seizure complaints or a history of seizure disorder. Id. An additional report from an examining neurologist indicated that plaintiff was probably not having seizures. Id. Because the medical evidence conflicted with plaintiff's subjective account of a seizure disorder, the ALJ properly discredited plaintiff's testimony regarding his seizures. Id.

Further, the ALJ compared plaintiff's subjective complaints of neck pain resulting from his cervical fracture to medical records following plaintiff's injury. Tr. 19. The ALJ found that the medical records "fail to reveal steady complaints of pain, neck complaints, myelopathy or motor weakness." Id. Additionally, the ALJ examined evidence that despite plaintiff's complaints of limited range of motion, there were medical records that indicated that plaintiff had been riding his bicycle. Id. The ALJ found that "the ability to ride a bicycle is entirely inconsistent with the range of motion limitations and overall pain levels claimant described at the hearing." Id.

Thus, because plaintiff's level of activity was inconsistent with his alleged degree of impairment, the ALJ found plaintiff's testimony not credible. Id. The ALJ relied on specific evidence

PAGE 10 - OPINION AND ORDER

in the record that undermined plaintiff's subjective claims of pain and impairment. The ALJ's credibility finding is affirmed.

B. Dr. Kokkino's Opinion

Plaintiff's second assignment of error is that the ALJ did not provide specific and legitimate reasons for rejecting the findings of a treating physician, Dr. Kokkino, who opined that plaintiff had credible, and for a time, disabling pain. Pl. Opening Br. 16. Plaintiff argues specifically that the indefinite work release signed by Dr. Kokkino is evidence that substantiates plaintiff's subjective pain complaints. Pl. Opening Br. 15. For the reasons stated below, the ALJ's credibility findings regarding Dr. Kokkino's opinion are affirmed.

A treating physician's opinion is entitled to deference and must be weighted according to all other substantial evidence in the case record. Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998). An ALJ may reject a treating physician's opinion if it is primarily based on a claimant's self-reports that have been properly discounted as incredible. Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). If the ALJ rejects the uncontroverted opinion of a treating physician, the ALJ must provide specific and legitimate reasons for doing so and these reasons must be supported by substantial evidence in the record. Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001), citing

PAGE 11 - OPINION AND ORDER

Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998).

Here, the ALJ determined that Dr. Kokkino's opinion regarding plaintiff's pain is inconsistent with other evidence contained in the record. Tr. 18-20. The ALJ evaluated and appropriately weighed the medical records from Dr. Kokkino before determining that Dr. Kokkino's remarks did not conclusively establish plaintiff's reported levels of pain. Tr. 19. Contrary to the plaintiff's assertions that the indefinite work release signed by Dr. Kokkino certifies plaintiff's claims of pain, the ALJ found that there were reasons to doubt Dr. Kokkino's opinion. Id. The ALJ was not persuaded by Dr. Kokkino's conclusion that plaintiff could not successfully work because Dr. Kokkino's opinion was based solely on plaintiff's subjective complaints of pain. Id. Dr. Kokkino's opinion regarding plaintiff's ability to work was not corroborated by any other objective evidence, such as evidence of functional limitation or assessment of exertional capabilities. Tr. 19-20. The ALJ considered the objective evidence taken from the record indicating that plaintiff had a residual functioning capacity of light work, and additionally, had the ability to engage in activities such as riding a bicycle, before determining that plaintiff's subjective complaints of pain to Dr. Kokkino were not entirely credible. Tr. 20.

Because the ALJ provided specific and legitimate reasons

PAGE 12 - OPINION AND ORDER

for rejecting the opinion of Dr. Kokkino based on other substantial evidence in the record, the ALJ's credibility findings regarding Dr. Kokkino's report are affirmed.

C.    Whether Plaintiff's Mental Impairment Meets or Equals
      Listing § 12.05C

Plaintiff's third allegation of error is that the ALJ should have found him disabled under the Secretary's listings at step three in the sequential proceedings. Pl.'s Opening Br. at. 10-14. Specifically, plaintiff argues that his verbal IQ score of 70 combined with his other impairments determined by the ALJ to be severe in step three of the sequential evaluation are sufficient to meet or equal Listing § 12.05C. Id. Plaintiff further asserts that the ALJ failed to provide clear and convincing reasons for finding that plaintiff was not disabled under Listing § 12.05C. Id.

At step three of the sequential disability analysis, the ALJ determines whether plaintiff's severe impairments meet or equal a "listed" impairment in the regulations. 20 C.F.R. § 416.920(a)(4)(iii). To meet a Listing, the impairment must satisfy all of the components of the Listing. 20 C.F.R. § 416.926(a).

In order to meet Listing § 12.05, which addresses mental retardation, plaintiff must first establish that he has "significantly subaverage general intellectual functioning with

PAGE 13 - OPINION AND ORDER

deficits in adaptive functioning during the developmental period;
i.e. the evidence demonstrates or supports onset of the
impairment before age 22." 20 C.F.R. Pt. 404, Supt. P, App. 1 §
12.05. The record reveals that plaintiff has difficulty
performing well in school settings and continues to struggle with
reading, writing, and verbal skills. Tr. 203-210. It is
undisputed that plaintiff has lived with the onset of these
mental impairments prior to the age of 22. Tr. 203-209.

Second, plaintiff must also meet associated "A," "B," "C,"
or "D" criteria. To meet the "C" criteria, plaintiff must
establish "(1) a valid verbal, performance, or full scale IQ of
60 through 70; and (2) a physical or other mental impairment
imposing an additional and significant work-related limitation of
function." 20 C.F.R. Pt. 404, Supt. P, App. 1 § 12.05(c). Here,
it is undisputed that plaintiff has a physical or other mental
impairment imposing an additional and significant work-related
limitation of function. Tr. 12. Therefore, whether plaintiff
meets Listing § 12.05C hinges on whether he has established "a
valid verbal, performance, or full scale IQ of 60 through 70."

As such, plaintiff's argument lies with the ALJ's ruling
that plaintiff did not have "significantly subaverage general
intellectual functioning" to satisfy the § 12.05 criteria. Pl.
Opening. Br. 13. The ALJ found that plaintiff did not meet or
equal the criteria of § 12.05C, as the ALJ did not find that

PAGE 14 - OPINION AND ORDER

plaintiff had "a valid verbal, performance, or full scale IQ of
60 through 70" to qualify for disability. Tr. 14-16. However,
plaintiff argues:

> In the case at hand, Dr. Northway measured Plaintiff's
> verbal IQ score at 70. R. 206. With this score,
> Plaintiff met the IQ prong of Listing 12.05C. The
> Commissioner must use this score of 70 in assessing the
> listings level of Plaintiff's intellectual functioning,
> because it is the lowest in a given Wechsler series.
> 20 C.F.R. Pt. 4, Supt. P, App. 1, 12.00 (D)(6)(c).
> That Plaintiff's other subscores were higher (78
> performance IQ and 72 full scale IQ) is irrelevant
> under this analysis... The ALJ vaguely rejected this
> precise score of 70, pointing to one comment in Dr.
> Northway's report, that Plaintiff's illiteracy would
> have a negative impact on the verbal measures
> administered for the assessment. R. 14, 208.

Pl. Opening Br. 11.

Thus, the question before this court is whether the ALJ
properly concluded that plaintiff's verbal IQ of 70 did not meet
or equal the Listing requirements of § 12.05C.

Plaintiff underwent neuropsychological testing to evaluate
his IQ using the Wechsler Adult Intelligence Scale-III. Tr. 203-
210. These tests were conducted by David Northway, Ph.D. Id.
The IQ tests indicated that plaintiff achieved a verbal quotient
of 70, a performance quotient of 78, and a full-scale quotient of
72. Tr. 206. Plaintiff's lowest score was his verbal quotient
of 70, which falls at the high end of the threshold for the §
12.05C criteria. Dr. Northway opined that the results of
plaintiff's IQ test placed him in the borderline IQ range. Tr.

PAGE 15 - OPINION AND ORDER

206.

"Borderline intellectual functioning" describes an IQ ranging between 71 and 84. American Psychiatric Assn, *Diagnostic and Statistical Manual*, Fourth Ed., Text Rev. (2000), p. 740. A borderline IQ range is outside the range prescribed by Listing § 12.05. To meet Listing § 12.05, including § 12.05C, plaintiff must show an IQ score *below* 71. 20 C.F.R. Pt. 404, Supt. P, App. 1 § 12.05. In this case, even though Dr. Northway diagnosed plaintiff with borderline functioning, plaintiff's lowest IQ score was in fact below 71. Plaintiff's lowest IQ score was 70. Plaintiff correctly points out that the regulations require the Commissioner to use the lowest of these IQ scores in conjunction with Listing § 12.05. 20 C.F.R. Pt. 4, Subpt. P, App. 1, 12.00 D(6)(c). With an IQ score of 70, plaintiff has demonstrated the requisite IQ score to qualify as "significantly subaverage general intellectual functioning" for purposes of Listing § 12.05C.

### 1. The ALJ's Analysis Under 12.05C

There was no evidence that the ALJ considered Listing § 12.05C's criteria in making her determination that plaintiff failed to meet the § 12.05C Listing requirements. Tr. 14. Notwithstanding the Listing requirements of § 12.05C, the ALJ focused her analysis of plaintiff's neuropsychological evaluation on the portions that indicated that plaintiff has borderline

PAGE 16 - OPINION AND ORDER

intellectual functioning, not mental retardation.  Tr.  14-15.
Citing Dr. Northway's report, the ALJ found evidence that
plaintiff had "global functioning that was consistent with some
mild symptoms or some difficulty in social, occupational, or
school functioning, but good functioning overall with some
meaningful interpersonal relationships."  Tr. 14.  Using Dr.
Northway's findings, the ALJ concluded that there was no
"substantial or convincing" evidence that plaintiff had mental
retardation.  Tr. 15.

    Along with Dr. Northway's report, the ALJ considered the
evidence that despite plaintiff's symptoms of mental impairment,
plaintiff was nevertheless able to engage in substantial gainful
work activity up until plaintiff sustained the cervical fracture.
Tr. 15.  The fact that plaintiff was able to work with his mental
disability prior to his cervical injury seemed to convince the
ALJ that plaintiff's IQ score of 70 was not determinative of
pervasive and lifelong mental retardation sufficient to satisfy §
12.05C.  Tr. 15.

    Although the ALJ provided specific reasons in support of her
finding that plaintiff was not mentally retarded, these reasons
were nevertheless legally insufficient for establishing that
plaintiff's disability did not meet § 12.05C.  The ALJ failed to
support her position that plaintiff's IQ score of 70 did not meet
the Listing requirements of § 12.05C, and a full explanation of

her position was warranted since an IQ score of 70 falls into the disability range of 60 through 70 under § 12.05C. The ALJ vaguely explained why plaintiff's verbal IQ score did not qualify as disabling, but this explanation fails to mention the Listing criteria of § 12.05C:

> Claimant's performance on testing of memory showed that he did better on simple memory tasks and struggled more on measures that were more complex in nature. He claimed to be illiterate and Dr. Northway remarked that an inability to read or write would impact the verbal measures administered during the assessment in that he did not have the academic background to perform well on a number of the subtests. Tr. 14.

With the above statement, the ALJ argues that the verbal IQ test was skewed by plaintiff's illiteracy and that perhaps the results of the test underrepresented plaintiff's mental capabilities. This is an insufficient explanation for why the ALJ determined that plaintiff's IQ score did not meet or equal Listing § 12.05C. Even assuming, however, that plaintiff's verbal IQ was misquoted due to his illiteracy, the ALJ was required at the very least to explain why a misquoted IQ score due to illiteracy precludes the plaintiff from meeting the § 12.05C Listing. Twenty C.F.R. § 404.1515(a) sets forth a clear requirement that disability must be found when the plaintiff's impairment satisfies all of the components of Listing § 12.05C. When plaintiff's verbal IQ of 70 is combined with his other severe mental and physical impairments, plaintiff necessarily meets the listing requirements

PAGE 18 - OPINION AND ORDER

of § 12.05C.  As such, the ALJ was required to provide a clear
and convincing explanation for why she concluded that plaintiff's
verbal IQ score of 70 did not meet or equal § 12.05C, and the ALJ
erred when she failed to provide any such explanation.

    In summary, because plaintiff has a verbal IQ score of 70,
he has "significantly subaverage general intellectual
functioning" which satisfies the Listing criteria of § 12.05.
The ALJ's conclusion to the contrary was not based on substantial
evidence.  The ALJ failed to provide legally sufficient reasons
for rejecting the evidence that plaintiff's IQ score did meet or
equal Listing § 12.05C, and this is reversible error.

## III. Remand to Award Benefits

    A case will be remanded for an immediate award of benefits
when: 1) the ALJ has failed to provide legally sufficient reasons
for rejecting evidence of disability; 2) there are no outstanding
issues that must be resolved before a determination of disability
can be made; and 3) it is clear from the record that the ALJ
would be required to find plaintiff disabled were such evidence
credited.  Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996).
Here, the ALJ failed to provide legally sufficient reasons for
rejecting evidence that plaintiff's IQ score met or equaled the §
12.05C Listings, and it is clear that the ALJ would be required
to find plaintiff disabled were such evidence credited.  There
are no outstanding issues that must be resolved before a

PAGE 19 - OPINION AND ORDER

determination of disability in this case can be made. Therefore, the Court will credit the improperly rejected evidence and remand for an award of benefits.

## CONCLUSION

The Commissioner's Decision is not based on substantial evidence and is therefore REVERSED and REMANDED for the payment of benefits.

IT IS SO ORDERED.

Dated this 5th day of March 2012.

Ann Aiken
United States District Judge

PAGE 20 - OPINION AND ORDER